BROTHERHOOD OF LOCOMOTIVE
FIREMEN AND ENGINEMEN, H. E.
Gilbert, J. W. Crockrell and J. C. Brooks,
Appellants,

v.

MISSISSIPPI EXPORT RAILROAD
COMPANY, Appellee.

No. 23329.

United States Court of Appeals
Fifth Circuit.

June 1, 1967.

———◆———

Thomas D. Bourdeaux, Meridian, Miss., Russell B. Day, Harold C. Heiss, Cleve-

land, Ohio, Heiss, Day & Bennett, Cleveland, Ohio, Ethridge, Minniece, Bourdeaux & Jones, Meridian, Miss., of counsel, for appellants.

Lawrence J. Latto, Washington, D. C., David C. Welch, Laurel, Miss., Benjamin W. Boley, Washington, D. C., Shea & Gardner, Washington, D. C., of counsel, for appellee.

Before HUTCHESON and WISDOM, Circuit Judges, and CONNALLY, District Judge.

PER CURIAM.

On August 28, 1963, Congress enacted Pub.L. 88–108,[1] 77 Stat. 132, to resolve by compulsory arbitration a dispute in the railroad industry between many of the major railroad carriers and the unions representing firemen and enginemen. The dispute generally was whether firemen should continue to be employed on diesel locomotives in freight and yard service. The statute prohibited any strike concerning this dispute and authorized the creation of an arbitration board. The board's award, known as Award 282,[2] was adverse to the unions. The sole question on this appeal is whether the statute and the award apply with respect to the controversy between the parties of the instant case, also involving the employment of firemen on diesel locomotives in freight and yard service. The district court held in favor of the award's application, and we affirm.

The scope of the application of Pub.L. 88–108 must be ascertained from its own provisions. The union, Brotherhood of Locomotive Firemen and Enginemen (BLF&E), argues that the disputes which the statute was intended to govern are identified in the preamble, which recites: "Whereas the labor dispute between the carriers represented by the Eastern, Western, and Southeastern Carriers' Conference Committees and their

---

1. The text of the law, without the preamble, is printed as a note at 45 U.S.C.A. Sec. 157 (1966 Supp.).

2. Pub.L. 88–108 and Award 282 were held valid in Brotherhood of Locomotive Fire-

men & Enginemen v. Chicago, B. & Q. R.R., 225 F.Supp. 11 (D.D.C.), aff'd on opinion below, 118 U.S.App.D.C. 100, 331 F.2d 1020, 1021 cert. denied, 377 U.S. 918, 84 S.Ct. 1181, 12 L.Ed.2d 187 (1964).

employees represented by [various unions, including BLF&E], threatens essential transportation services of the Nation. * * *" The appellee, Mississippi Export Railroad, was not a member of one of the three named conferences, and from this BLF&E maintains that any dispute it had with appellee is not governed by the statute.

It is clear after reading the statute in full, however, that its application is not governed by the preamble which merely states in general terms the manner in which the nationwide dispute arose. Rather, the language setting forth the statute's application is found in the body of the statute, and is tied to the existence of certain notices which the carriers and unions served upon one another. Pursuant to Section 6 of the Railway Labor Act, 45 U.S.C. Sec. 156, many of the nation's carriers served identical notices upon a number of unions proposing changes in existing collective bargaining contracts relating to the employment of firemen. The carriers' notices were served on November 2, 1959; the appellee served a similar notice to BLF&E two weeks later on November 16, 1959. The unions in turn served counternotices on September 7, 1960; the BLF&E served such a notice on appellee on the same date.

Section 1 of the statute, whose function was to preserve the status quo pending a decision of the arbitration board, designates without further limitation the carriers covered as those who "served the notices of November 2, 1959," [3] and the unions as those who "received such notices or served the labor organization notices of September 7, 1960." Again in Section 3, which provides that the arbitration board would determine the disposition to be made of the questions raised by the notices, the dispute was identified as that discussed in the notices served on the particular dates.

It is quite plain, therefore, that Congress intended the statute to govern any dispute which arose out of these notices, and we agree that "Award 282 applies in the case of any carrier as to which either one of the two sets of notices were outstanding", Akron & Barberton Belt R.R. v. Brotherhood of Railroad Trainmen, 252 F.Supp. 207, 210 (D.D.C. 1966) (Holtzoff, J.), regardless of whether a carrier was a member of one of the three conferences. Since it is undisputed that BLF&E served the appellee with such a notice on September 7, 1960, which remained outstanding, we hold that the award applied to the dispute under consideration here.

The judgment is affirmed.

---

3. In the court below, BLF&E argued that the instant dispute was outside the statute because appellee's notice was served on BLF&E two weeks later than the date stated in the statute. This argument was abandoned on appeal, counsel for BLF&E stating in oral argument that he did not regard this two-week difference as significant.